## ARTICLE VII
### WAGE RATES

**Section 1.** The minimum hourly wage rate for Cement Masons/Plasterers shall be determined in accordance with the geographic area in which the labor was rendered and shall be as set forth in the attached Appendix.

### HAZARDOUS WORK

**Section 2.** On hazardous waste removal work, on a state or federally designated hazardous waste site, where the Cement Mason/Plasterer is in direct contact with hazardous material and when personal protective equipment is required for respiratory, skin and eye protection, the Cement Mason/Plasterer shall receive the hourly wage plus an additional twenty percent (20%) of that wage.

### OVERTIME RATES

**Section 3.**
a. The overtime premium shall be determined in accordance with the geographic area in which the labor was rendered and shall be as set forth in the attached Appendix.

## ARTICLE VIII
### METHOD OF PAYING WAGES

**Section 1.** Subject to the provisions of this Article, Employees shall be paid on the job no later than the end of the regularly-scheduled pay day. When Employees are obligated to wait for their wages to be paid by their Employer, such waiting time shall be paid at straight time rate of pay to a maximum of eight hours per calendar day (including weekends) until said monies are actually received by the Employee. This sentence shall not apply to the withholding of the final paycheck pursuant to the provisions of this Article. Wages shall be paid in United States currency unless suitable arrangements are made for the expeditious cashing of checks by Employees at no expense to them.

**Section 2.** An itemized statement bearing the name of the Employer shall be included in pay envelope or upon check stub. Said statement shall show gross income, deductible items, the name and address of the Employer, the signature of an authorized representative of the Employer and the net amount. This statement or check stub to be retained by Employee.

**Section 3.** In addition to any other provision of this Agreement, an Employer shall pay a Twenty-Five Dollar ($25.00) fee to each employee for each paycheck that cannot be cashed or is returned due to insufficient funds.

## ARTICLE IX
### STEWARDS

**Section 1. Duties of the Steward.** The Union shall appoint a Steward for each job. The Steward shall examine all working cards at such times as he deems necessary. He shall be permitted a reasonable time to perform his duties. The Steward shall be the last employee to be laid off.

**Section 2.** It shall be the duty of a steward to record and report to the proper agent of the Employer all injuries and accidents. He shall remain with any victim of an injury until professional care is available.

**Section 3.** The duties of a steward shall include the notification of the Business Representative of any work that is not performed in a workmanlike manner.

**Section 4.** A steward may endeavor to adjust grievances, if possible, but shall not take upon himself the obligation to stop work or strike a job because of a grievance. He shall notify the Business Representative of the existence of a grievance and be guided by his advice and instruction.

## ARTICLE X
### BUSINESS REPRESENTATIVES

**Section 1.** Business Representatives of the Union shall be allowed to visit on the job at any time, provided there is no interference with Employees doing their work.

**Section 2.** The Employer shall provide the Business Representative of the Union with the names and hours worked of Employees, if requested.

## ARTICLE XI
### HEALTH AND WELFARE FUND AND INDUSTRY ADVANCEMENT PLAN

**Section 1.** The Employer shall, on or before the tenth day following the end of each payroll week, pay to the Cement Masons Local Union No. 592 Health and Welfare Fund, or to such other fiduciary as shall be from time to time designated by the Union (any of which is hereinafter referred to as the "Depository" or "Trustee"), a sum for each hour (whether regular time or overtime) for which wages or any type of compensation payable (under this Agreement) are payable during such payroll week to any employee, as the term Employee is defined in this Agreement. Each such hour is hereinafter referred to as an "hour worked." Their hourly sum shall be determined in accordance with the geographic area in which the labor was rendered and shall be as set forth in the attached Appendix.

Section 2. The Health and Welfare Fund shall be administered and maintained pursuant to an Agreement and Declaration of Trust between the Union and the Contractor Associations as stated in Appendix B to which the Employer assents to be bound and well as to all amendments or modifications thereto that may hereafter be made by the parties.

Section 3. The Employer shall contribute to the Industry Advancement Program as herein established an amount for each hour worked by each Journeyman (including foreman) and apprentice employed by said employers. Said contribution shall be made in the same manner and time as the employer's contribution to the Health and Welfare Fund as heretofore provided herein. The sum to be thus contributed shall be determined in accordance with the geographic area in which the labor was rendered and shall be as set forth in the attached Appendix.

## ARTICLE XII
### PENSION FUND

Section 1. the Employer shall, on or before the tenth day following the end of each payroll week, pay to the Cement Masons Local Union No. 592 Pension Fund, or to such other fiduciary as shall be from time to time designated by the Union (any of which is hereinafter referred to as the "Depository" or "Trustee"), a sum for each hour (whether regular time or overtime) for which wages or any type of compensation payable (under this Agreement) are payable during such payroll week to any employee, as the term Employee is defined in this Agreement. Each such hour is hereinafter referred to as an "hour worked." The hourly sum shall be determined in accordance with the geographic area in which the labor was rendered and shall be as set forth in the attached Appendix.

Section 2. The Pension Fund shall be administered and maintained pursuant to an Agreement and Declaration of Trust between the Union and the various Contractors Association as stated in Appendix B to which the Employer assents to be bound and well as to all amendments or modifications thereto that may hereafter be made by the parties.

## ARTICLE XIII
### DELINQUENCY AND COLLECTION PROCEDURE

Section 1. The provisions of this Article shall apply with equal force and effect to the obligations set forth in this Agreement regarding contributions to the Joint Apprentice Committee, the Health and Welfare Fund, the Industry Advancement Plan, the Pension Fund, the Field Dues Check-off and the Political Action Committee.

Section 2. All payments shall be remitted to the depository designated herein on Report Forms designated, as appropriate, by the funds or Union. In the event that the remittance report accompanying any payment made to the Depository shows that the full sum as therein required is not paid, or is not intended to be paid, then the Depository shall dispose of said payment by distributing to each party such portion of the remittance in proportion to the fraction that each such recipient's hourly remittance bears to the total hourly remittance required by this Agreement.

15

Section 3. To the extent that an employee has not performed Covered Employment during the reporting period, the Employer shall so advise the Funds of that fact in the time and by the method other wise provided for the remittance of contributions herein.

Section 4.
(A). Except as otherwise specifically provided herein, payments not received by the 10th day following the payroll week which the Report covers shall be considered "delinquent" for purposes of this Agreement.
(B). If the Trustees of the respective Funds, in their sole discretion, determine that an Employer has a satisfactory record of timely payments, the Trustees may notify such Employer in writing that his payments into the respective Funds will be required by the 15th day following the end of each calendar month, which shall be the "Due Date."

Section 5. Payments received by the Fund or Union after the due date shall automatically incur and shall include a liquidated damages charge equal to ten percent (10%) of the gross amount due each Fund or Union if submitted after the due date.

Section 6. In addition to the liquidated damages charge provided for above, the alleged failure of the Employer to make payments when due or payments received after the due date shall subject the Employer to one or more of the following actions:

(A). As otherwise described in this Agreement, the Union shall have the right to withhold employees covered by this Agreement until all sums due (including liquidated damages) are paid. If such action shall, in the discretion of the Union, prove necessary or desirable, the employees whose labor is thus withheld, shall be paid their wages and fringe benefits for all time lost pending payments by the Employer as provided in this Agreement.

(B). The appropriate Funds and/or Union may institute formal collection proceedings that may include, but are not limited to the institution of legal action against the Employe, to secure, and if necessary, to compel payment of the monies described herein. In the event that an Employer is delinquent in the payment of contributions, the Employer shall pay (in addition to the principal sums due and the ten percent (10%) liquidated damages) interest calculated in accordance with ERISA, all costs of suit (including reimbursement for Fund administrative time) and attorneys' fees and costs, regardless of whether suit or other formal proceedings are instituted.

(C). The Employer shall also be responsible for all claims paid by the Health and Welfare Fund on behalf of all employees on whose behalf contributions are due during the pendency of the delinquency, regardless of whether the delinquency is ultimately paid.

Section 7. The Employer shall, simultaneous with the remittance of monies described

16

herein, transmit to said Depository, a report containing (1) the names and Social Security numbers of the persons to whom this Agreement is applicable, who have been in the employ of the Employer during such payroll week; (2) the number of hours during said payroll week for which wages or any type compensation are payable under this Agreement; and (3) such other payroll information as the Boards of Administration of the Funds herein provided for may reasonably require for the proper administration of said Funds.

**Section 8. Surety Bonds.**
(A). The payments to be made and, where appropriate, monies to be withheld, as provided in this agreement to the Joint Apprentice Committee, the Health and Welfare Fund, the Industry Advancement Plan, the Pension Fund, the field Dues check off and the Political Action Committee shall, in addition to the other remedies provided herein, be guaranteed and secured by requiring the Employer to guarantee or secure the faithful making of such payments by the deposit of Thirty Thousand dollars ($30,000.00) in cash with the Trustee or by the Bond of a recognized and responsible corporate surety.

(B). Such Employer shall upon certification to him and to the Union by the Trustee, that such employer or other employer is in default in the payments required of him by this Agreement, furnish further corporate surety to assure payments required under this Agreement by such Employer to an amount of Thirty Thousand dollars ($30,000.00) over and above the amount of such payments in default, or, in the alternative, shall deposit with the Trustee as collateral security for the faithful performance of his own Bond assuring said payments, a further amount in cash or in securities acceptable to the Trustee, sufficient to restore such collateral security to an amount of thirty Thousand dollars ($30,000.00).

**Section 9.** Prior to entering into any subcontract for work covered by this Agreement, the Employer will verify with the Fund that the proposed subcontractor has a signed Agreement and has posted the fringe benefit bond required under this Agreement. After the employer has contacted the Fund, the fund will inform the Employer in writing within 72 hours if the proposed subcontractor does not have a fringe benefit bond, and/or an Agreement. The employer will not enter into a subcontract until the subcontractor has posted a bond and signed an Agreement. The failure of the Employer to comply with this Section 9, will require the Employer to be primarily responsible for all Wages and Fringe Benefits of a sub-contractor who does not have a Bond and/or Agreement with the Union.

The Employer agrees that, upon written notice from the Fund that its subcontractor is delinquent in the payment of fringe benefits on his particular project, the Union, the subcontractor, and the Employer shall meet to resolve said delinquency. In the event that satisfactory arrangements to collect the delinquency are not made, a jointly payable check in the amount of said delinquency shall be issued to the Funds by the Employer. This will not preclude the Union from exercising its rights provided in Article 14.

**Section 10.** Estimated payments in advance for all payments (except wages) required

17

under this Agreement will be made by the Employer if it has failed to demonstrate in the sole and exclusive judgment of the Union, a current record of timely payments with the Funds.

**Section II.** The Employer shall also, upon request of any agent or designee of the Funds of Union, permit such agent during regular business hours to inspect and make copies of any and all records of the Employer, including but not limited to those records pertaining to compensation paid to employees, federal tax returns, unemployment compensations returns and other records, disbursements journals of any nature and all other records of any nature or character whatsoever (including those of any individual who the Fund or Union believes may be subject to the Employer's contributory requirement) potentially relevant, in the judgment of the agent described hereinbefore, to, and of assistance in determining whether the Employer's obligations hereunder to make payments to the Depository have been faithfully performed. If such inspection and/or audit reveals the Employer failed to make such payments in full, the Employer shall be required to pay for the cost of such inspection and/or audit at the rate of at least One Hundred Dollars ($100.00) per day or the actual cost thereof, whichever is greater, as well as any additional monies provided for herein.

# ARTICLE XIV
## SUBCONTRACTING OF JOB-SITE WORK

The Employer agrees that he will not subcontract any work which is covered by this Agreement that is to be done at the site of any job to which this Agreement is applicable, except to a contractor bound by the terms of this Agreement, or to another Agreement with this Union.

# ARTICLE XV
## DISPUTES

**Section 1.** The following shall be the procedure to be followed with respect to all disputes of any nature whatsoever which may arise between the parties hereto or their individual members:

(a). If the dispute affects or arises on a particular job or operation, an attempt shall be made to settle it by discussion between the Foreman and or the Superintendent on the job or operation and or the Union's Business Representative for the area in which the job or location is located, on the other hand.

(b). If the discussion provided for in paragraph (I) above is not held, or if it does not result in a prompt settlement of the dispute, an attempt shall be made to settle the dispute by discussion between the Employer and/or the Superintendent on the job or operation, on the one hand and the President of the Union and/or the Business Representative aforesaid, on the other hand.

(c). If the discussion provided for in paragraph (ii) above does not result in a prompt settlement of the dispute, or if the dispute affects or involves more than one job or operation, an attempt shall be made to settle the dispute by discussion between the President of the Union, or his designee, on the one hand, and the principal officer of the Employer, or his designee, on the other hand. If such discussion does not result in a prompt settlement of the dispute and either Union or the Employer desires further action respecting such dispute, such further action shall be arbitration in the manner hereinafter set forth.

(d). The Union or the Employer, whichever decides that there shall be further action on the dispute, shall notify the other in writing by registered mail of its intention to submit the dispute to arbitration, and shall, simultaneously, file with the American Arbitration Association a written demand for arbitration of said dispute, whereupon an arbitrator shall be appointed in accordance with the then prevailing rules of the Voluntary Labor Arbitration Tribunal of said American Arbitration Association.

(e). The arbitrator thus appointed shall hold hearings as promptly as may be and shall render his award in writing and such award shall be final and binding upon the Union and the Employer and upon their respective principals or members. The arbitrator's fees and expenses and the fees of the American Arbitration Association shall be shared equally by the Union and the Employer.

(f). In the event that the Arbitrator shall determine that either party acted in bad faith with regard to the facts underlying the issues or with regard to the conduct of the proceedings, the Arbitrator is empowered to assess all or a portion of the fees and expenses incurred in the presentation of the case and reasonable attorneys' fees as an element of damage. Furthermore, should the Arbitrator direct a financial remedy, such remedy shall commence to run from the date of the violation and shall be an interest rate from that date equal to the sic (6) month United States Treasury bill rate, adjusted for each calendar quarter that such remedy is payable, as in effect from the date that the violation occurred to the date that payment is made.

Section 2. Except as is otherwise provided in this Agreement, no dispute, disagreement of question, shall result in any strike, slowdown, stop page or abandonment or lockout.

Section 3.
(a) Anything to the contrary hereinbefore contained notwithstanding, Section 2 of this Article shall be inoperative and shall be of no effect, the Union may elect to withhold labor, with respect to claims or disputes arising out of an alleged failure by an Employer to comply with any of the provisions of this agreement relating to contributions to the Joint Apprentice Committee, the Health and Welfare Fund, the Industry Advancement Plan, the Pension Fund, the Field Dues, Checkoff Collection and Delinquency Procedure and the Political Action Committee or relating to the

provisions of this agreement regarding either the participation in, or recognition of the finality of, the arbitral settlement of disputes set forth above in this Article.

(b). Irrespective of whether the Union exercises the election granted to it by the foregoing section to waive utilization of the disputes procedures contained herein, the Union may, in the event of a claim of dispute such as mentioned in said Section 2(a), treat as a breach of this Agreement the alleged failure by an Employer to comply with any of the provisions of this collective bargaining agreement regarding contributions to the Joint Apprentice Committee, the Health and Welfare Fund, the Industry Advancement Plan, the Pension Fund, the Field Dues Checkoff and the Political Action committee or compliance with the Collection and Delinquency Procedure or of any of the provisions of Article IX of this Agreement hereof, and instead, by reason of such failure, persuades or directs Employees covered by this Agreement not to accept employment by, or to cease rendering any further service to such Employer, then the delinquent Employer shall pay the wages and the fringe benefit contributions of such Employee or Employees who cease to render any further service to, or refuse to accept employment by, such Employee or employees who cease to render any further service to, or refuse to accept employment by, such delinquent Employer or other delinquent Employer, until such time as the delinquent reports and/or payments, if due, have been made. In no event shall such wages or fringe benefit contributions be paid to those Employees who were not employed at the time of such refusal to render further service or refusal to accept employment. Such persuasion or direction by the union to the Employees, and the cessation of work, or the refusal to accept employment, by the Employees shall not be deemed to be a violation of this or any other Article of this Agreement.

Section 4. The parties recognize and agree that the obligations set forth in Article I and XIV are of central importance with respect to the maintenance of their relationship and that violations of those obligations would significantly and adversely affect the legitimate interests and rights of the Union and of the bargaining unit. Moreover, the parties further recognize and agree that because the damages flowing from such violations would be difficult to quantify in actual dollar damages, the arbitrator is hereby instructed, in addition to any other from of relief, to assess such financial damages flowing from each and every violation of any obligation contained in Articles I and XIV as follows:

A. Liquidated damages payable to the Union in the amount of $2,500 for each day on which such violation occurred on each job or project whose total contract value to the employer herein is less than $50,000 and $5,000 for each day on which such violation occurred on a job or project whose total contract value to the employer herein is greater than $50,000; and

B. The monies that would have been paid to the Funds, including interest, liquidated damages and attorney's fees incurred in the claim to recoup same, for each hour that bargaining unit members were deprived of work opportunity.

## ARTICLE XVI
### MISCELLANEOUS

**Section 1.** Any other Employer employing Cement Masons/Plasterers and/or apprentices within the territorial jurisdiction covered by this Collective Bargaining Agreement may become a party hereto and be bound by the provisions hereof, without becoming a member of the Association, by the execution of an undertaking to that effect.

## ARTICLE XVII
### FIELD DUES CHECKOFF

**Section 1.** Effective May 1, 1994, each Employer shall deduct from the wages of all Employees who are covered by this Agreement and who have signed and delivered to the Employer proper legal authorization for such deductions, a working dues checkoff in the sum as certified by the Union as being due and owing by the employee for each hour worked (whether regular time or overtime). Should such sum result in a fraction of a cent, the fraction shall be increased to the next higher full cent. The amount per hour to be deducted for dues checkoff shall be shown the Employers' reporting form as cents per hour as computed in accordance with the above.

**Section 2.** Each such Employer shall, within ten (10) days after the end of each payroll week, transmit to the Depository, as provided in herein, amounts deducted during such payroll week, together with the Employers' report of said deductions, which report shall be on the same form as is used by the employer for reporting payments due by the Employer as contributions made pursuant to this Agreement to the Health and Welfare and Pension Funds. The payments required by this article shall be subject to all of the provisions of this Agreement regarding the collection of fund contributions.

**Section 3.** Any Employee who loses his good standing in his Local Union by reason of his failure to tender the Local Union periodic membership dues and or initiation fees uniformly required, or who is in arrears in the payment of field dues to the Local Union, shall upon written notice to that effect from the Local Union to the Employer, be discharged.

## ARTICLE XVIII
### POLITICAL ACTION COMMITTEE

**Section 1.** The employer shall deduct from the wages of all Employees who are covered by this Agreement and who have signed and delivered to the Employer proper legal authorizations for such deductions, a contribution to the Cement Masons Local Union No. 592 Political Action Committee in the amount as certified by the Union as having been voluntarily contributed by the employee.

**Section 2.** The Employer shall, within ten (10) days after the end of each Payroll Week, transmit to the Depository as defined in this Agreement amounts deducted during such Payroll Week pursuant to this Article, together with the Employer's report of deductions, which report shall be on the same form as is used by the Employer for reporting payments due by the Employer as contributions made to the Health and Welfare and Pension Fund.

## ARTICLE XIX
### LABOR SAVING MACHINERY

There shall not during the life of this Agreement be any restriction on the use of machinery or labor saving devices used in the work covered by this Agreement. If any machinery or labor saving devices are used (such as a laser screed, paving machine, etc.), same shall be furnished by the Employer and operated by the Employees pursuant to the terms of this Agreement.

## ARTICLE XX
### ALCOHOL AND DRUGS

**Section 1.**
Employees or applicants for employment (hereinafter "employees") who possess "illegal drugs" on the job site, except for medication prescribed by the employee's physician or over-the-counter medication, and employees functionally impaired from performing their duties due to "illegal drugs" may be barred from the job site subject to the terms below. As used herein, the term "illegal drugs" means any chemical substance whose (1) manufacture, use, possession or sale is prohibited by law; and (2) any legally-dispensable controlled substance (medications available only as prescribed by a licensed physician) obtained fraudulently or used by any individual other than the person for whom prescribed.

**Section 2.**
An employee on the job site may be required to submit to a chemical test which demonstrates on-site impairment if a reasonable, objective basis exists to believe that the employee is impaired on the job site. A "reasonable, objective basis" will exist under the following circumstances:

> (A). A first hand observation is made of the employee's job performance, and documented in writing prior to any tests; and
> (B). The employee's conduct or actions indicating alleged impairment shall be observed and documented in writing by two supervisors on the job site; and
> (C). A determination is made that the employee's conduct is symptomatic of drug impairment by a physician or health care professional qualified to make such a determination following a consultation with the employee.